82 So.2d 267

**ALABAMA TEXTILE PRODUCTS
CORPORATION**

v.

Curtis H. RODGERS.

**4 Div. 257.**

Court of Appeals of Alabama.

June 7, 1955.

Rehearing Denied June 30, 1955.

W. H. Albritton, Albritton & Rankin, Andalusia, for appellant.

Baldwin & Baldwin, Andalusia, for appellee.

PRICE, Judge.

This appeal involves a claim for unemployment compensation by the appellee, Curtis H. Rodgers, a former employee of the appellant, Alabama Textile Products Corporation.

Claimant was disallowed compensation by a claims examiner, an Appeals Referee and the Board of Appeals in the administrative processes of the applicable law.

The cause was submitted in the Circuit Court of Covington County on an agreed statement of facts.

This is an appeal from the judgment of the circuit court in which appellee was awarded unemployment compensation.

Appellee had been employed as a "collar fuser" by appellant, a manufacturer of shirts, for almost eleven years. Sometime prior to February 16, 1952, appellee was told by his supervisor that the company was gradually changing from the manufacture of dress shirts to that of sport shirts and that work in appellee's department would probably diminish in the future, but that it was the policy of appellant to transfer employees to other jobs when their jobs were eliminated because of a change in operations, and although the change from the manufacture of dress shirts to sport shirts would require the probable termination of some employees, appellee's seniority would, in all probability, have entitled him to re-

main on his regular job, up to the date of hearing in the circuit court, or would have placed him in line for transfer to another full time job.

During the entire calendar year of 1951, excluding vacation periods, appellee worked forty-nine weekly payroll periods, losing no time because of plant shut downs. However, appellee worked a full forty-hour week for only sixteen weeks of the calendar year of 1951, averaging only 34.2 hours per week for the entire year. From January 1, 1952, until March 7, 1952, when he terminated his employment, appellee worked eleven weekly payroll periods, or an average of 27.84 hours per week.

On February 16, 1952, appellee qualified as a candidate in the Democratic primary election for the office of clerk of the Circuit Court of Covington County. He made application to appellant for a leave of absence but was refused on the ground that leaves of absence were not granted to employees for the purpose of making political races.

Appellee continued to work for appellant until March 7, 1952, when he quit his job, after giving two weeks notice. It is stipulated that appellee left his job voluntarily and that he would not have done so had he not decided to enter the campaign for office of Circuit Clerk. However, it is contended by appellee that he would not have qualified and entered into the campaign for political office if he had been getting full time employment with assurance of sufficient future work to support himself and his widowed mother.

After quitting his job, appellee actively engaged in his political campaign, spending most of his time from March 7, 1952, to May 6, 1952, soliciting votes for the office. He was the successful candidate in the Democratic primary election held on May 6, 1952.

On May 8, 1952, and again on May 29, 1952, appellee applied for work with appellant and was advised there was no work available for him. On May 30, 1952, he filed his claim for unemployment compensation.

Appellee satisfied the eligibility conditions of subsections A, B, D, E and F of Section 213 of Title 26, Code 1940. As to subsection C of said eligibility statute, he was physically and mentally able to perform work for which he was qualified by past experience and training, but there was a restriction as to his availability due to the fact that he would not have accepted employment requiring him to contract for work extending past January 16, 1953, the date on which he would take office as Circuit Clerk of Covington County.

■ Subsection B of Section 214 of Title 26, Code of 1940, as amended, provides that an individual shall be disqualified for unemployment benefits, "If he has left his employment voluntarily without good cause connected with such work."

Since it was admitted that appellee voluntarily quit his job, the burden was cast upon appellee to show that he had good cause, connected with such work, for leaving. Henderson v. Department of Industrial Relations, 252 Ala. 239, 40 So.2d 629.

In Consiglio v. Administrator, Unemployment Compensation Act, 137 Conn. 693, 81 A.2d 351, 354, claimant had quit her job to take a better paying job, but lost it after two weeks. She then applied for unemployment compensation contending that she left her first job with good cause connected with her work because of reduction in wages. The Supreme Court of Connecticut said:

"The statute compels disqualification in every case in which an employee has left his work, with the one exception where there is sufficient cause connected with the employment which he leaves, * * *. That the employee can obtain better terms of employment elsewhere is a factor not connected with his present employment but with the other job."

■ We think claimant's leaving his employment to campaign for the office of Circuit Clerk was a factor connected with that office and was not the "good cause con-

nected with such work" which under our statute would justify him in quitting his job.

■ "A substantial reduction in earnings is generally regarded as good cause for leaving one's employment, and, hence, one who leaves for such reason is not disqualified for unemployment compensation on the ground of leaving his work voluntarily without good cause; but in this connection the surrounding circumstances should be considered in determining whether a particular reduction in pay constitutes good cause for leaving one's employment." 81 C.J.S., Social Security and Public Welfare, § 170, p. 258.

■ The evidence here presents a decrease in the number of hours worked, but there does not appear to have been a decrease in the wage rate. As stated above, it is stipulated that the company policy was to transfer employees to other jobs when their jobs were eliminated because of a change in operations and that appellee's seniority would in all probability have placed him in line for transfer to another full time job.

Considering the circumstances surrounding this case we conclude that claimant voluntarily terminated his employment "without good cause connected with such work."

In Unemployment Comp. Comm. v. Tomko, 192 Va. 463, 65 S.E.2d 524, 527, 25 A. L.R.2d 1071, it was stated:

"As used in the statute, the words 'available for work' imply that in order that an unemployed individual may be 'elibible to receive benefits' he must be willing to accept any suitable work which may be offered to him, without attaching thereto restrictions or conditions not usual and customary in that occupation but which he may desire because of his particular needs or circumstances.

\* \* \* \* \* \*

"In order to recover compensation benefits under the statute the burden is on the claimant to show that he has met the benefit eligibility conditions, which in this case is unrestricted availability for work. Department of Industrial Relations v. Tomlinson, 251 Ala. 144, 36 So.2d 496, 497; Haynes v. Unemployment Comp. Comm., 353 Mo. 540, 183 S.W.2d 77, 80."

■ We are of the opinion that because of the restriction which the claimant imposed upon his willingness to work, he was not available for work within the meaning of Sec. 213, subd. C, and therefore was not eligible to receive unemployment benefits.

For the reasons set out herein the judgment of the circuit court is reversed and the cause remanded.

Reversed and remanded.